

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable H. A. Hodges
County Auditor
Williamson County
Georgetown, Texas

Dear Sir:

Opinion No. O-5058
Re: Exemption from payment of
ad valorem taxes on property
acquired by City of George-
town, Texas for airport pur-
poses.

We received your letter dated January 22, 1943
in which you submit the following inquiry:

"Will you kindly inform me if the following
property is subject to taxation by the State,
County and School?

"The City of Georgetown purchased 600 acres
land for an Airport, purchase through a bond
issue voted by the citizenship, however an Air-
port has not been constructed and the Federal
Government has notified the City Council that
the appropriation has been withdrawn as the funds
are to be used for purposes more necessary for
the conduct of the war. The City draws a reve-
nue from this land through a lease to an indivi-
dual, or individuals. The land is not within
the City limits.

"Is this described property subject to
taxation by the taxing units of the County and
State?"

In Opinion No. O-4775, this department held that
land purchased by the City of Abilene for an addition to its
airport was not subject to taxation. We enclose a copy of

Honorable H. A. Hodges, Page 2

that opinion.

The constitutional and statutory provisions pertinent to your question are set out in the case of City of Abilene v. State, 113 S.W. (2d) 631 (1938) (Writ refused for want of jurisdiction). We copy from that case as follows:

"Const. Art. 8, § 1: 'All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value. * * * Provided, that two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this State shall be exempt from taxation.'

"Const. art. 11, § 9: 'The property of counties, cities and towns, owned and held only for public purposes, * * *and all other property devoted exclusively to the use and benefit of the public shall be exempt from *** taxation.'

"Const. art. 8, § 2: 'The Legislature may, by general laws, exempt from taxation public property used for public purposes; actual places of religious worship; places of burial not held for private or corporate profit; all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools, (also the endowment funds of such institutions of learning and lands) and institutions of purely public charity; and all laws exempting property from taxation other than the property above mentioned shall be null and void.'

"Revised Statutes 1925, art. 7150:

"'The following property shall be exempt from taxation, to-wit: * * *

"'All property, whether real or personal,

Honorable H. A. Hodges, Page 3

belonging exclusively to this State, or any
political subdivision thereof.'"

Briefly, the facts in the above mentioned case
are: The City of Abilene purchased 34 tracts of land, lo-
cated in Jones County, in the year 1926 to and including
1930 to be used to provide an adequate water supply for
said City. The City then leased the land to individuals
for agricultural purposes, not having sufficient funds
to use the property for the purpose for which it was pur-
chased, to wit: the construction of a lake for the storage
of water. It was further found that the City had not aban-
doned its intention to use the property for the purpose
for which it had been purchased.

In holding that the above mentioned property
was exempt from taxation, the Eastland Court of Civil
Appeals, speaking through Justice Funderburk (City of Abilene
case, supra) said:

"We are not unmindful of the rule that pro-
visions for exemption from taxation are to be
strictly construed. The goal of construction,
however, is the ascertainment of intention. It
is not believed that the rule of strict construction
would require the adoption of the least reasonable
of two possible constructions, and particularly
if that one be less effective to accomplish the
manifest purpose of the exemption. In the phrase
'used for public purposes,' if the word 'used'
be construed to mean the same as exclusively
used, then as we have already seen there would
be conflict between constitutional provisions.
Such result forbids, therefore, the adoption of
that construction. It remains, however, to
consider whether the word 'used' should be con-
strued to mean the same as continuously, unin-
terruptedly, or unremittently used. Such a

Honorable H. A. Hodges, Page 4

meaning must be ascribed to the word to justify
the conclusion that the Legislature was without
power to provide for the exemption of the property
in question. Let us consider how such a construc-
tion would operate as applied to supposeable cases.
Would a county jail become subject to taxation
when from the lack of prisoners it was not actually
used for a time exceeding a taxing period? Would
a county courthouse site, or a city hall site, be
subject to taxation and beyond the power of the
Legislature to exempt it, if no operations to
build the courthouse or city hall had been com-
menced on the 1st day of January following ac-
quisition? Even if building operations were in
progress, could it be said within such a strict
meaning of the word that the property was being
used for public purposes? It would certainly not
be so used in the same sense that it would be,
after the completion and occupancy of the court-
house or city hall by the several agencies of
government. In the instant case, suppose that
with extraordinary expedition a dam had been com-
pleted, but that for more than a year, including
the beginning of one or more years, because of
lack of rain no water had been impounded and for
that reason no actual use could be made of the
property. Could it be said in that case that
the property was subject to taxation because the
Constitution denied the Legislature authority to
provide for its exemption? We think to hold that
the word 'used' was intended to have any such
meaning would be unreasonable and would defeat
in a large measure the manifest purpose of the
grant of power to declare exemptions. It is,
therefore, our view that when the facts of a
given case establish the ownership of property
by a municipal corporation, which has been ac-
quired for an authorized public purpose, and that
and the purpose for which it is owned and held
has not been abandoned, such property is to be
rega

Honorable H. A. Hodges, Page 5

regarded as used for public purposes, and the Legislature has the power to provide by general law for its exemption from taxation. (Underscoring ours).

"It is quite apparent that the exemption declared in said R.S. 1925, art. 7150, is more comprehensive than the power which the Legislature possessed. The purport of the statute is broad enough to exempt public property regardless of its use. This the Legislature was expressly denied the power to do. But it does not follow, we think, that the statute is for that reason wholly inoperative. We see no reason why it may not be operative, as an exercise of all the power the Legislature had to declare the exemption. The declared exemption includes public property used for public purposes and to that extent, we think, the statute valid and operative."

You state in your letter that the City of Georgetown purchased the land in question for an airport. From your letter, we gather that the Federal Government had intended to furnish funds for the necessary construction and improvements. It now appears that the Federal Government will not use its funds to construct and improve the land in question for an airport.

As we understand the City of Abilene case, supra, the property in question purchased by the City of Georgetown is exempt from taxation provided said City has not abandoned its intention to devote the property to a public purpose--towit--an airport. In this respect, what the City intends to do is a question of fact which is not within our province to determine. Before we can answer your question, we will have to know whether the City of Georgetown has abandoned all intention to use the property for an airport or for some other public purpose. These facts are necessitated by the City of Abilene case, supra. See also State vs. City of Beaumont, 161 S.W. (2d) 344.

Should you determine that the City has abandoned its intention to use the 600 acres of land in question for a public purpose, it will be necessary for us to know whether or not the City would sell it if offered a "fair price" for same. We would also need to know what type of bonds the City of Georgetown issued to purchase the land and, should the City sell the land, whether the consideration of such sale would be applied to the bonded indebtedness. In our opinion, some, if not all, of these facts are required by the case of State vs. City of Houston, 140 S.W. (2d) 277 (Writ Refused).

We wish to point out that under certain conditions the leasehold interest in this land would be subject to taxation. Article 7173, R.C.S.

We sincerely regret that we cannot answer your request as submitted to us in your letter of January 22nd, last. We might suggest that you consult with your District Attorney about this matter. It might be possible that you can obtain and give us the necessary facts, giving due regard to the three cases cited herein, that we can definitely answer your question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Lee Shoptaw
Assistant

LS:nw

APPROVED FEB 12, 1943

ATTORNEY GENERAL OF TEXAS

